**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| W/G KRISTINA 123 LLC, A DELAWARE LIMITED LIABILITY  COMPANY, W/G LCD, LLC, A  DELAWARE LIMITED LIABILITY COMPANY, W/G SPI LLC, A DELAWARE LIMITED LIABILITY COMPANY AND MICHAEL SPARKS, an Individual, | No.  08 cv 3462 |
| Plaintiffs, | JUDGE MANNING |
| | MAGISTRATE JUDGE BROWN |
| vs. | |
| THOMAS MELENA, ROLLING MEADOWS CITY MANAGER, STEVEN WILLIAMS, ROLLING MEADOWS POLICE CHIEF, UNKNOWN ROLLING MEADOWS POLICE OFFICERS and the CITY OF ROLLING MEADOWS | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

NOW COME the PLAINTIFFS, W/G KRISTINA 123 LLC, W/G LCD, LLC,

W/G SPI, LLC AND MICHAEL SPARKS, ("Plaintiffs"), by and through their attorneys,

BLAKE HORWITZ, ELLIOT RICHARDSON, ERICA FAABORG, RACHELLE

SORG, ABBAS MERCHANT, and SEAN BAKER, and in support of their motion for a

temporary restraining order and preliminary injunction, state the following:

## INTRODUCTION

Eleven days ago, the City of Rolling Meadows[1] erected cement barricades around an apartment complex. The justification – crime prevention. Rolling Meadows has blocked off all entrances/exits to Plaintiffs' apartment complex so that it can establish a checkpoint to hand out flyers, alerting occupants/guests as to crime preventative measures (lock doors at night, not to leave valuables in cars, etc.). Absent from this scenario is the existence of imminent circumstances: bomb threats, earthquake, S.W.A.T. detail rescuing hostages, etc. Constitutional law 101 dictates the obvious constitutional deprivation (lack of notice and hearing prior to property right deprivation, *infra)*. Plaintiffs seek to enjoin Defendants from maintaining the cements barriers and police manned check point at its apartment complex.

Plaintiffs own an apartment complex in Rolling Meadows, Illinois. The complex is home to over 2000 residents, covers 34 acres of land and contains two story apartment buildings. The Rolling Meadows police have blocked off 12 of the 13 entrances, leaving one entrance open as a police check point[2]. The owners of the apartment complex (12 Oaks) never consented to the cement barricades, nor were provided proper notice and/or hearing. Defendants conduct violates the 14th Amendment and must not be countenanced.

The good will associated with Plaintiffs' business is quickly evaporating: Plaintiffs' property interests are rapidly diminishing, residents complain that they feel

---

[1] By and through its officers and officials.
[2] As of the filing of this brief, police officers do not occupy the check point. It is unclear when Rolling Meadows will unilaterally decide to reinstate a police presence. Police officers were present from June 9, 2008 to June 13, 2008.

imprisoned (treated like criminals), and there has been a significant reduction of prospective tenants since the barricades were positioned.

Plaintiffs seek a temporary restraining order and permanent injunction. Specifically, the Plaintiffs seek removal of the large concrete barricades blocking access to the apartment complex. Plaintiffs also request an order prohibiting the Rolling Meadows police department from placing police officers at the entrances of Plaintiffs' private property. Plaintiffs also seek any and all other relief deemed fair and just.

## STATEMENT OF FACTS

Plaintiffs have owned 12 Oaks for almost four years. (See Affidavit of Miguel Arceo, para. 2, attached hereto as Exhibit A.) This complex consists of over six hundred apartments. (Exhibit A, para. 3.) Approximately 80% of the tenants living at 12 Oaks are minorities.

The Defendants conducted a survey and determined that 67% of 12 Oaks residents preferred a greater police presence at the apartment complex. In response, the Defendants unilaterally installed concrete barricades onto 12 of the 13 entrances into the 34-acre apartment complex. Defendants created an armed checkpoint at the only remaining entrance to 12 Oaks.

Plaintiffs' general manager was informed that Defendants were considering the unilateral placement of barricades at 12 Oaks approximately three days before Defendants barricaded the premises. (Exhibit A, para. 3.) Plaintiffs were not provided a hearing before the Defendants sealed the complex and/or proper notice. The Defendants arrived on June 9th, barricaded the property, and established an armed police checkpoint. (Exhibit A, para. 4.)

The police officers stationed at the checkpoint directed residents and guests to roll down their windows prior to entering 12 Oaks.  The armed officers then hand the residents "flyers" about safety.  The officers also demand identification and interrogate those seeking entry as to the reason and duration of their stay and the location where they reside.  (Exhibit A, para. 7.)  Rolling Meadows does not regularly erect barricades at entrances to private property and create armed checkpoints to hand out leaflets on safety

Tenants have registered over fifty complaints about the police barricades and checkpoint.  Many residents feel imprisoned and believe that they are being treated like criminals.  Many residents blame management for the police action.  (Exhibit A, para. 8.)

Prospective tenant inquiries have substantially decreased since the police action.  There has been a 50% decrease in new tenant inquiries since the barricades and checkpoints were installed.  (Exhibit A, para. 9.)

Photographs of the barricades surrounding the 12 Oaks apartment complex are attached hereto as Group Exhibit B.  The barricades are intrusive, ugly, and most importantly, unconstitutional.

## LEGAL STANDARD FOR INJUNCTIVE RELIEF

In order to obtain injunctive relief, a plaintiff must demonstrate: (1) that no adequate remedy exists at law; (2) the existence of irreparable harm if the injunction is not issued; (3) a reasonable likelihood of success on the merits; (4) that the threatened harm the plaintiff will suffer without the injunction outweighs the threatened harm the injunction will have on the defendant; and (5) the public interest is best served by granting the injunction.  *Illinois Sporting Goods Ass'n. v. County of Cook*, 845 F.Supp. 582, 584-85 (N.D.Ill. 1994)**;** *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 8

F.Supp.2d 779, 785 (N.D.Ill. 1998).  The more likely a plaintiff is to prevail on the merits, the less heavily is the need for the balance of harms to weigh in his favor.  *Illinois Sporting Goods Ass'n*, 845 F.Supp. at 585.  Stated another way, the stronger a plaintiff's case is on the merits, the less consideration a court must give to the fourth and fifth elements for injunctive relief.  *Id*.  In the case at bar**,** the Plaintiffs satisfy all the elements for injunctive relief.

I.     **Plaintiffs Have No Adequate Remedy at Law and Will Suffer Irreparable Harm Without an Injunction**

The first two elements for a preliminary injunction are interrelated.  Indeed, the elements of "no adequate remedy at law and irreparable harm are really part of the same analysis".  *Bordelon*, 8 F.Supp.2d 779 at 789.  In the event this Court concludes there is no adequate remedy at law, an irreparable injury is also demonstrated.  *Id*.  Irreparable harm is also "presumed to flow from a constitutional violation which is not fully compensable by monetary damages."  *Id*.

Plaintiffs have no adequate remedy at law because an award of damages at the conclusion of a trial would be seriously deficient in comparison to the harm suffered.  *Illinois Sporting Goods Ass'n*, 845 F.Supp. at 585**.**  The Seventh Circuit has determined that an award of damages may be inadequate where a plaintiff's losses make damages difficult to calculate, such as lost business profits.  *Id.*  Moreover, the loss of customers and goodwill, and threats to business viability can all constitute irreparable harm for which there is no adequate remedy at law.  *Id.;* see *SMC Corp., Ltd v. Lockjaw, LLC,* 481 F.Supp.2d 918, 927-928 (N.D. Ill. 2007);  see also *Otero Sav. and Loan Ass'n v. Federal Reserve Bank of Kansas City*, 665 F.2d 275, 277 (10th Cir. 1981).

Plaintiffs in this case have no adequate remedy at law.  Moreover, the Plaintiffs sustain irreparable injury each day their property is barricaded and their tenants harassed by the police.  The blockade of 12 entrances into 12 Oaks' 34-acre complex causes the business to lose potential customers.  Indeed, the number of prospective tenants inquiring about renting at 12 Oaks has decreased by **over 50%** since the erection of the barricades and implementation of the police checkpoint.  This is not surprising given the conspicuous nature of the barricades and the police checkpoint.  The message sent to prospective tenants is that 12 Oaks is a dangerous place to live.  It is difficult to fathom prospective renters signing leases for apartments that are barricaded by the police.

Plaintiffs have also lost tremendous goodwill in their business.  The majority of the Plaintiffs' tenants are angry with the police barricades.  These individuals cannot conveniently gain access to their residence.  Moreover, tenants are forced to drive through a police checkpoint, and sometimes show identification, in order to obtain access to their homes.  The barricades and police checkpoint stigmatize the owners of 12 Oaks and their tenants.[3]  The goodwill already lost by 12 Oaks is immeasurable.  Simply put, who would want to live in a place where the most convenient entrance to his/her home is blocked by police barricades?  Who would want to live in a place where the only way to access one's residence is through a checkpoint manned by armed police officers?  Who would want to raise children in such an environment?  The Defendants' conduct threatens the financial viability of Plaintiffs' 34-acre apartment complex.

## II.    <u>Plaintiffs Have a Strong Likelihood of Prevailing on the Merits</u>

Plaintiffs have brought procedural and substantive due process claims against the City of Rolling Meadows and the individual Defendants.  They have a strong

---

[3] This is especially troubling considering that approximately 80% of the residents at 12 Oaks are minorities.

likelihood of prevailing on both.

A.    <u>Procedural Due Process Claim</u>

Plaintiffs were not afforded proper notice or any hearing before the Defendants essentially converted their property into a police state. Specifically, Plaintiffs were not provided notice or hearing before the Defendants barricaded 12 entrances to their property and established an armed police checkpoint at the only remaining entrance.

The deprivation of a citizen's property interest without due process of law constitutes a violation of the procedural guarantees afforded under the 14th Amendment. *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000). Procedural due process restricts the manner by which the government may undertake actions that infringe upon the rights of its citizenry. *Owen v. Lash*, 682 F.2d 648, 651 (7th Cir. 1982). In analyzing a procedural due process claim, a court must first decide whether the defendants deprived the plaintiff of a protected liberty or property interest, and if so, determine what process was due. *Brokaw*, 235 F.3d at 1019.

Plaintiffs have owned the 34-acre 12 Oaks apartment complex for over three years. The Defendants cannot legitimately challenge Plaintiffs' property interest in 12 Oaks. Crucially, the Plaintiffs' property rights include having free and unobstructed entrances onto their land. *Donovan v. Pennsylvania Co.*, 120 F. 215, 219 (7th Cir. 1903); *Simi Investment Co. v. Harris County*, 236 F.3d 240, 250-51 (5th Cir. 2000)(holding that the County's blockage of access to private land implicates a constitutionally protected property right).

The Sixth Circuit Court of Appeals heard a matter similar to the case at bar in *Warren v. City of Athens*, 411 F.3d 697 (6th Cir. 2005). The plaintiffs in that case owned a Dairy Queen in Athens, Ohio. *Id*. at 700. The Dairy Queen utilized a drive-thru lane, which resulted in substantial business for the enterprise. *Id*. at 711. Residents that opposed the drive-thru alleged that existing cars caused traffic hazards and delays. *Id*. at 701. In response to noise complaints, traffic congestion and purported automobile collisions, the City Prosecutor advised the plaintiffs that a temporary curb would be placed along their property. *Id*. at 702. One month later, the City placed barricades along the plaintiff's land. *Id*. These barricades precluded customers from utilizing the Dairy Queen drive-thru. *Id*.

The *Warren* plaintiffs brought a procedural due process claim against the City of Athens and the City Prosecutor. *Id*. at 700. The Sixth Circuit held that the City of Athens had "clearly deprived the plaintiffs of a property interest by erecting barricades across one of the two means of access to their Dairy Queen." *Id*. at 709. The Sixth Circuit concluded that the defendant's failure to provide the plaintiffs a pre-deprivation hearing violated their constitutional rights under the 14th Amendment. *Id*. at 709-10. Accordingly, the Court issued a permanent injunction based on the defendant's procedural due process violations. *Id*. at 712.

In the case at bar, the Defendants have used barricades to close 12 of 13 entrances onto Plaintiffs' 34-acre apartment complex. In the *Warren* case, the Sixth Circuit held that the City of Athens violated the 14th Amendment by blocking 50% of the means of ingress into the Dairy Queen. *Warren*, 411 F.3d at 709-10. Here, Defendant Rolling Meadows has actually placed barricades in front of over *90%* of the entrances onto

Plaintiffs' property. The Defendants in this case have "super-sized" the 14th Amendment

violations which occurred in the *Warren* case.

The First District of Illinois Appellate Court has also weighed in on the propriety

of barricading access to private property. *Superdawg Drive-Inc. v. City of Chicago*, 440

N.E.2d 890 (Ill.App.Ct. 1982). The Court determined that the procedural due process

rights of an owner's fast-food restaurant were violated when an alley providing ingress

and egress onto the premises was barricaded without adequate notice or hearing. *Id*. at

894. The Court determined that notice and hearing were necessary, even though other

entrances to the restaurant remained open. *Id.*

In *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, Judge Gettleman tackled

issues relative to procedural due process. 8 F.Supp.2d 779 (N.D.Ill. 1998). The plaintiff

in *Bordelon*, a school principal, sought a preliminary injunction seeking reinstatement to

his former post after he was reassigned to an administrative position without a hearing.

*Id*. at 781. The Court concluded that the plaintiff was deprived of procedural due process

because his removal as principal occurred without a hearing. *Id*. at 788.

The Defendants have infringed upon Plaintiffs' property interests in 12 Oaks

without due process. In fact, the Defendants provided Plaintiffs absolutely no process at

all. For these reasons, the Plaintiffs have a reasonable likelihood of succeeding on the

merits of their procedural due process claims. Therefore, Plaintiffs pray that this

Honorable Court grant a temporary restraining order and a preliminary injunction.

B.    Substantive Due Process

The barricades and checkpoint maintained by Defendants at 12 Oaks are an

unconstitutional infringement of Plaintiffs' property interests in violation of their

substantive due process rights. While Plaintiffs face a high burden in proving a substantive due process violation, the actions of the City of Rolling Meadows are unambiguously unconstitutional.[4] The Defendants, in an arbitrary and capricious manner, placed concrete barricades in front of 12 of the 13 entrances into Plaintiffs' property, and have placed armed police officers at the sole remaining entrance. Even under the most minimal standard of review - rational basis - Defendants' acts are clearly unconstitutional as they violate Plaintiffs' substantive due process rights by infringing on Plaintiffs' property interest in 12 Oaks. Plaintiffs are able to demonstrate a lack of adequate state law remedies available to provide them with the requested relief (*i.e.* removal of the barricades and police checkpoint), and thus, satisfy all requirements for proving a substantive due process claim and demonstrate their strong likelihood of prevailing on the merits of their claim.

The Due Process Clause of the 14th Amendment includes a substantive component which bars arbitrary and capricious government actions regardless of the fairness of the procedures to implement them. In *New Burnham Prairie Homes v. Village of Burnham,* the Seventh Circuit stated that "a substantive due process claim can be brought in the context of property interest." 910 F.2d 1474, 1480 (7th Cir. 1990). Where a substantive due process challenge involves the deprivation of a property interest, a plaintiff must show: 1) that they have a property interest, and 2) that no adequate state law remedy exists or that there is an independent constitutional violation. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003).

In analyzing a substantive due process claim, the court looks to state law to define the property interest at stake. *Polenz v. Parrott*, 883 F.2d 551, 555 (7th Cir. 1989).

---

[4] The Defendants' conduct is a textbook example of a substantive due process violation.

The Illinois Supreme Court has recognized a property right to freely enter and exit private property. *Gibbons v. Paducah & I.R. Co.*, 284 Ill. 559, 562 (Ill. 1918). In *Gibbons*, the court held that "the right to use the streets as a means of ingress to and egress from private property is a private right, and the property owner may maintain an action for interference with that right." *Id*. Applying the holding of *Gibbons* to the instant case, and as stated above, it is clear that Plaintiffs' property rights include the right of ingress and egress onto their property. Further, Defendants have infringed on that right by erecting concrete barricades and a police checkpoint at the 12 Oaks entry ways. Thus, Plaintiffs have met their first burden in demonstrating a violation of their substantive due process rights.

To prove a substantive 14th Amendment due process violation, Plaintiffs must also demonstrate that either an independent constitutional violation exists or that state law lacks an adequate remedy for their injuries. *Lee*, 330 F.3d at 467. Here, Plaintiffs are not claiming an independent substantive constitutional violation;[5] rather, Plaintiffs claim that there are no adequate state remedies available to provide the relief requested.

The City of Rolling Meadows did not provide proper notice or a hearing to Plaintiffs prior to infringing on their property interest. That denied Plaintiffs an opportunity to object to the Defendants' actions, which in and of itself, shows that there was - and there remains - no adequate state law remedy to redress Plaintiffs' injuries. See *General Auto Service Station v. City of Chicago*, 2004 WL 442636, * 10-11 (N.D.Ill. 2004). Further, any state law remedy that Plaintiffs could seek may be barred by the

---

[5] This is not to say that Defendants are not violating substantive constitutional rights. Specifically, the barricades and the police checkpoint violate the 12 Oaks residents' 4th Amendment right to be free from unreasonable seizures and 1st Amendment right to free association; however, Plaintiffs lack standing to bring claims on behalf of their residents.

Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS

10. *See also* 745 ILCS 10/2-202 (2008); 745 ILCS 10/2-203 (2008); 745 ILCS 10/2-205

(2008); 745 ILCS 10/2-209 (2008); 745 ILCS 10/2-213 (2008); 745 ILCS 10/3-108

(2008). Indeed, the Seventh Circuit has stated that where governmental entities and

employees are provided immunity under state legislation for state law tort claims, there

may be no adequate state law remedy. *Surplus Store v. City of Delphi*, 928 F.2d 788, 790

(7th Cir. 1991).

Finally, the state law claims of trespass, conversion, and other similar state law

property claims are unavailable to Plaintiffs in this case. The issue in the present case is

not that Defendants have taken over Plaintiffs' property, or a portion thereof. Rather,

Plaintiffs allege in their Complaint that the Defendants have erected barricades, thus

impairing the ability of 12 Oaks residents to freely enter and exit their homes. These

barricades appear to have been erected on a public road and not on Plaintiffs' private

property. (Exhibit A, para. 12.) Thus, while Plaintiffs' property interests are being

infringed upon, they are unable to utilize state court claims as the City of Rolling

Meadows has strategically placed the barricades just far enough away from Plaintiffs'

property to avoid subjecting itself to the available state law claims.

However, even if this Honorable Court were to determine that state law provided

some (as of yet undetermined) state law remedy, Plaintiffs' substantive due process claim

still succeeds. The cases in which plaintiffs were required to show that no adequate state

law remedy existed prior to succeeding on a substantive due process claim involved

random and unauthorized conduct on behalf of the defendant state officials. See *Easter*

*House v. Felder*, 910 F.2d 1387 (7th Cir. 1990); *Klauth v. Hartford Ins. Co.*, 852 F.2d

951, 956 (7th Cir. 1988).  Yet, in this case, the acts of Defendants are not at all random,

nor are they unauthorized.  The City of Rolling Meadows and its police department have

acted pursuant to a formal policy in placing the barricades and police checkpoint at 12

Oaks.  The police officials were fully authorized by Rolling Meadows city officials to

engage in the acts that are infringing on Plaintiffs' property interests.  See *Best v. Special*

*Educ. Dist. of Lake County*, 1990 WL 205949 (N.D. Ill. 1990).

Plaintiffs now turn to the Defendants' arbitrary and capricious actions.  In

*Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir. 1988), the

Seventh Circuit stated that a plaintiff must allege facts that show that the governmental

action at issue is arbitrary and capricious, and has no substantial relation to the public

health, safety, morals, or general welfare, to successfully bring a substantive due process

claim.  "[A] particular decision or action is arbitrary if it is reached without an adequate

determining principle or was unreasoned." *Scudder v. Town of Greendale*, 704 F.2d 999,

1002 (7th Cir. 1983)(internal quotations omitted) (citing *U.S. v. Carmack*, 329 U.S. 230,

243 (1946).

Infringements on property interests have been determined to be arbitrary and

capricious where the state does not provide adequate justification or proof for the act.

Also, where the property interest of one individual is infringed upon while others

similarly situated suffer no infringement, the act is considered arbitrary and capricious.

For example, in *Meer v. Graham*, 524 F.Supp.2d 1044, 1048 (N.D. Ill. 2007), the plaintiff

raised a substantive due process claim after he was released from his job duties.  The

defendant state actor, a public college, claimed that the plaintiff had been unprofessional

and had violated college policies.  *Id*. at 1049.  However, without concrete evidence of

these claims, the court determined that the defendant's stated reasons for terminating the plaintiff could not be verified, hence, the defendant's actions were arbitrary and capricious.  *Id.* at 1052.

Where the state infringes on one's property interest, yet leaves in tact the property interests of similarly situated individuals, courts have determined that the infringement is arbitrary and capricious and a substantive due process claim will succeed.  In *Sternaman v. McHenry County*, the court determined that denying the plaintiff a conditional use permit deprived him of his substantive due process right to property.  454 F. Supp. 240, 247 (N.D. Ill. 1978).  The defendant alleged that it denied plaintiff's permit due to public welfare concerns for school children near plaintiff's property and the decline in property value around the plaintiff's property. *Id*. 245.  The court found that this was an arbitrary and capricious infringement on plaintiff's property interest because the defendant had granted conditional use permits in areas with denser residential population. *Id*. at 247-8.

Like the plaintiffs in *Meer* and *Sternaman*, the instant Plaintiffs were deprived of their substantive due process right when the Defendants' barricades and police presence infringed on their property interest in 12 Oaks.  The Defendants' stated justification for placing cement blockades at 12 of the 13 entrances - thus forcing all incoming and outgoing traffic through a police checkpoint - is to inform the residents of safety precautions by handing out flyers.  This is not a rationale manner by which to accomplish the Defendants' stated intentions.  Moreover, some tenants and visitors of 12 Oaks are stopped, questioned, asked for identification, and *only then* handed a flyer.

Analogous to *Meer*, where the defendant's stated justification for its unconstitutional acts was questionable and held to be arbitrary, the justification provided

by Rolling Meadows is specious at best.  While the stated objective of providing safety

tips to 12 Oaks residents is reasonable, the manner in which Defendants are

implementing their objective is arbitrary and capricious.  There are a myriad of ways to

educate the public in crime prevention that would not infringe on Plaintiffs' property

interests.  Posting signs, calling community gatherings, and mass mailings are just a few

examples of methods Defendants could employ that would not violate Plaintiffs'

constitutional rights.

Applying the rationale of *Sternaman* further strengthens the Plaintiffs' position.

Like the *Sternaman* plaintiff, here, Plaintiffs are being treated differently than similarly

situated individuals and, accordingly, the Defendants' acts are arbitrary and capricious.

Rolling Meadows does not regularly erect barricades at entrances to private property and

create armed checkpoints to hand out leaflets on safety.  (Exhibit A, para. 13.)  Nor is it

common practice to stop individuals at driveways, ask them to roll down their windows,

request identification, and inquire as to their motives at their residence.  Undoubtedly, the

Defendants' actions are arbitrary and capricious and are a violation of Plaintiffs'

substantive due process rights.

Plaintiffs have suffered a significant deprivation because the interest in their

property, since the Defendants placed cement barricades at every entrance, has greatly

declined.  Though Defendants claim they intend to create a deterrent effect on crime at 12

Oaks, in reality, the Defendants are working to deter future renters.  Further, the majority

of the Plaintiffs' tenants are angry at the idea of being treated like criminals every time

they enter or leave their homes.

The Defendants have violated Plaintiffs' substantive due process rights by creating an impermissible infringement on their property. There are no adequate state remedies available. Even if a state law remedy exists, Plaintiffs still succeed on their substantive due process claim because Defendants' acts are authorized and deliberate. As Plaintiffs are able to demonstrate a reasonable likelihood of succeeding on the merits of their case, this Honorable Court should grant their request for injunctive relief.

**III.** **The Threatened Harm to the Plaintiffs if an Injunction Is Not Issued Outweighs the Threatened Harm an Injunction Would Have on the Defendants**

Plaintiffs have suffered and will continue to suffer immeasurable harm unless this Honorable Court grants their injunction. As stated above, their business suffers each day these barricades restrict access to 12 Oaks in the form of dissatisfied tenants and loss of prospective tenants. Plaintiffs anticipate presenting evidence at the preliminary injunction stage of these proceedings that the Plaintiffs' property interests have been greatly diminished by the barricades and armed checkpoint at 12 Oaks.

The Defendants' conduct also creates a safety hazard. For example, ambulance personnel responding to an emergency (heart attack victim) might be delayed in providing service as the barricades block off closer entry to the various apartment buildings where the patient may need help. As only one entrance is provided, confusion could also set in as to the location of the apartment in relation to the one entrance. A situation of this sort (assuming injury manifests) could give rise to liability directed towards both Defendants (to this cause) and Plaintiffs.

Moreover, an injunction will not harm the Defendants. Enjoining the Defendants from blockading 12 Oaks would still allow them abundant opportunities to engage in

safety promotion and crime prevention - the stated purposes for their actions.  These goals can be reached by holding communal meetings or passing out flyers door to door. Instead, the Defendants chose to take truly unprecedented action.  They have blockaded an entire community and created an armed checkpoint where residents must show identification before entering their residence.  This is not a necessary means to achieve Defendants' end.

The Defendants' ongoing conduct threatens to destroy and/or seriously undermine the Plaintiffs' business.  On the other hand, Defendants would suffer no harm if they were ordered to remove the barricades from Plaintiffs' property.  At a minimum, an injunction must be granted until such time as the Plaintiffs are provided with a hearing.

### IV.    Granting Plaintiffs an Injunction is in the Best Interest of the Public

The public interest is served by granting an injunction in this case.  There are over 2000 tenants at 12 Oaks.  Presently, their homes have been surrounded by cement barricades, their access to public roads restricted, and their safety jeopardized.  Further, the Defendants have stigmatized this entire community with their barricades and police checkpoint.  The Defendants are also subjecting the residents of 12 Oaks to seizures without reasonable suspicion.

The City of Rolling Meadows may claim that the public concerns of safety in crime prevention justify the intrusion on the residents' 4th Amendment rights, and thus, pass constitutional muster.  However, the Supreme Court of the United States has created definite parameters regarding roadway checkpoints.  The instant barricades and police checkpoint at 12 Oaks do not comport with those standards and, hence, are unconstitutional.

Programmatic, suspicionless searches are valid in limited circumstances where there are "special needs, beyond the normal need for law enforcement." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). Specifically, roadway checkpoints are upheld only in instances where the public interest in highway safety outweighs the intrusion on the individual's constitutional rights, such as in the cases of drunk driving and the interception of illegal aliens. See *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444 (1990); *U.S. v. Martinez-Fuerte*, 428 U.S. 543 (1976). But where a checkpoint, such as the barricades at the 12 Oaks complex, has the primary purpose of general crime deterrence or investigation, it contravenes the 4th Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000); see also *State of Tennessee v. Hayes*, 188 S.W.3d 505 (Tenn. 2006)(an analogous checkpoint program at a housing complex designed at crime deterrence was held to violate the residents' 4th Amendment rights).

Here, the City of Rolling Meadows has enacted a checkpoint under the guise of better informing the 12 Oaks residents about crime prevention. However, this mandate is easily served in a variety of manners that do not cause repeated and continuous constitutional violations. There are no exigent circumstances present to justify these barricades. Yet, the residents of 12 Oaks must pass through a regimented stop where armed police officers question them about their motives while they are simply entering their homes. Without requiring the police and the City of Rolling Meadows to comply with the requirements of the 4th Amendment, we run the risk of allowing constitutional violations to become a part of our daily lives.

The Defendants are causing copious violations of the public's constitutional rights on Plaintiffs' private property. The general interest in disseminating information about

crime prevention cannot justify the ongoing contravention of the public's right to be free from unreasonable seizures.  Further, the safety risks of maintaining the barricades far outweigh the Defendants' interests, which are easily served by a variety of other, constitutional, manners.  Clearly, granting the injunctive relief Plaintiffs' request is in the public's interest.

WHEREFORE, the Plaintiffs, respectfully request this Honorable Court grant Plaintiffs' motion for temporary restraining order and preliminary injunction and enter an order:

a.     Directing the Defendants to immediately remove the barricades restricting access to 12 Oaks;

b.     Enjoining the Defendants from further access into and out of 12 Oaks;

c.     Directing the Defendants to immediately remove the police checkpoint at 12 Oaks;

d.     Awarding Plaintiffs the attorney fees and costs associated with this matter; and

e.     For any further relief this Honorable Court deems fair and just.

Respectfully Submitted,

s/ Blake Horwitz_____
Attorney for the Plaintiffs
Blake Horwitz

s/ Elliot Richardson_____
Attorney for the Plaintiffs
Elliot Richardson

**HORWITZ, RICHARDSON & BAKER LLC**
Two First National Plaza
20 S. Clark St. Suite 500
Chicago, Illinois 60603
Ph (312) 676-2100
Fax (312) 372-7076


**MELTZER, PURTILL & STELLE LLC**
Donald G. Mulack, (1983202)
William J. Mitchell (6198642)
1515 E. Woodfield Road, 2d Floor
Schaumburg, IL 60173
Ph (847) 330-2400

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

W/G KRISTINA 123 LLC, A DELAWARE
LIMITED LIABILITY COMPANY, W/G
LCD, LLC, A DELAWARE LIMITED
LIABILITY COMPANY, W/G SPI LLC, A
DELAWARE LIMITED LIABILITY
COMPANY AND MICHAEL SPARKS, an
Individual,

        Plaintiffs,

vs.

THOMAS MELENA, ROLLING MEADOWS
CITY MANAGER, STEVEN WILLIAMS,
ROLLING MEADOWS POLICE CHIEF,
UNKNOWN ROLLING MEADOWS POLICE
OFFICERS and the CITY OF ROLLING
MEADOWS

        Defendants.

No. 08 cv 3462

JUDGE MANNING

MAGISTRATE JUDGE BROWN

### AFFIDAVIT OF MIGUEL ARCEO

Your affiant, Miguel Arceo, having first been duly sworn upon oath, states:

    1.    I am the general manager of the 12 Oaks at Woodfield Apartment Complex.

    2.    W/G Kristina 123 LLC, A Delaware Limited Liability Company, W/G LCD,

LLC, A Delaware Limited Liability Company, W/G SPI LLC, A Delaware Limited Liability

Company, and Michael Sparks have owned 12 Oaks for almost four years.

    3.    12 Oaks is a thirty-four acre apartment complex. There are over six hundred

apartments and 2,000 residents. The rental prices for apartments at 12 Oaks range from $800 to

$1300 a month. 12 Oaks has a swimming pool for residents and guests.

3. On June 6, 2008, I was advised by Sergeant Lusk that the Rolling Meadows police department was going to barricade twelve entrances into 12 Oaks. At this time, they also advised they were going to create a police checkpoint at the last and remaining entrance. I was not advised of the manner by which they would barricade the property. This information was provided to me on Friday (June 6, 2008).

4. On June 9, 2008, Rolling Meadows police officers came to 12 Oaks and barricaded twelve of thirteen entrances/exits providing access to the premises. These barricades consisted of large concrete slabs as identified in the photographs that are being provided to this Court.

5. The Rolling Meadows police department left only one method of ingress and egress onto the premises. The police established an armed checkpoint at this location.

6. I have personally observed Rolling Meadows police officers stop residents and guests at 12 Oaks at the above-referenced checkpoint. The Officers have directed individuals to roll down their windows before entering the premises.

7. I have been advised orally, and in writing (by residents at 12 Oaks) that police officers have directed residents to provide identification at the checkpoint prior to entering 12 Oaks. Residents have also advised me that Officers have asked probing questions of residents seeking to enter 12 Oaks, such as the reason for entrance, duration of stay, location of their living establishment.

8. My office has received in excess of fifty tenant complaints since the City of Rolling Meadows installed the barricades police checkpoint. Residents report they feel they are being treated like criminals, as though they are imprisoned. Although 12 Oaks has not condoned, and in fact opposes the above-referenced police action, many tenants blame the

management for the erection of the barricades – meaning that they believe that management installed the barricades, not the police.

9.    Prospective tenant inquiries have decreased by at least fifty percent since June 9, 2008.

10.    Our busiest months are traditionally from June until September. However, there has been a substantial drop off in new tenant inquiries immediately following the installation of the barricades. Since June 9, 2008, we have had a reduction of fifty percent in new tenant inquiries.

11.    The barricades can also provide confusion to emergency ambulance personnel. Prior to the barricades, ambulance personnel were provided at least 13 entrances to enter the complex. Now, there is only one. Given that the apartment complex is large and that there are many residents, the reduction to only one entrance may be dangerous to the occupants of the premises as it might be difficult for ambulatory personnel to navigate the 34 acre complex and locate a resident in emergency need (i.e. heart attack) where every second counts.

12.    The barricades, based on my observation, have been placed on areas immediately outside (by inches) the 12 Oaks property.

13.    Based on my observation, there are no other communities in Rolling Meadows that have been blocked off by Rolling Meadows police. This includes those communities immediately adjacent to the 12 Oaks complex.

DATED:  6/20 - 2008

FURTHER AFFIANT SAYETH NOT

MIGUEL ARCEO

*Under penalties as provided by law pursuant to 28 U.S.C § 1746, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.*

SUBSCRIBED AND SWORN to
before me this 20th day
of June, 2008.

Notary Public

"OFFICIAL SEAL"
ROSE M. BARNHART
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/4/2010

# EXHIBIT B













