| | |
|---|---|
| W/G KRISTINA 123 LLC, A DELAWARE LIMITED LIABILITY  COMPANY, W/G LCD, LLC, A  DELAWARE LIMITED LIABILITY COMPANY, W/G SPI LLC, A DELAWARE LIMITED LIABILITY COMPANY AND MICHAEL SPARKS, an Individual,<br><br>      Plaintiffs,<br><br>vs.<br><br>THOMAS MELENA, ROLLING MEADOWS CITY MANAGER, STEVEN WILLIAMS, ROLLING MEADOWS POLICE CHIEF, UNKNOWN ROLLING MEADOWS POLICE OFFICERS and the CITY OF ROLLING MEADOWS<br><br>      Defendants. | No.  08 cv 3462<br><br>JUDGE MANNING<br><br>MAGISTRATE JUDGE BROWN |

**PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………...………………………ii

TABLE OF AUTHORITIES ……………………………………………………………………iii

STATEMENT OF FACTS ………………………………………………………………...……..2

STANDARD OF REVIEW …………………………………………………………………………3

ARGUMENT …………………………………………………………………………………..3

    I.     Plaintiffs Substantive Due Process Claims Are Ripe And Not Subsumed By The
         "Takings Clause" …………………………………………………………………3
         A.    Plaintiffs May Bring a Substantive Due Process Claim Against Defendants
             ………………………………………………………………………………4
         B.    The Cases Cited By Defendants Are Inapplicable And Do Not Apply To
             Subsume Plaintiffs' Claims Under The Takings Clause …………………6

    II.    Plaintiffs' Procedural Due Process Claims Are Ripe ……………………………..8
         A.    Plaintiffs' Procedural Due Process Claims Are Instantly Cognizable In
             Federal Court ……………………………………………………………..8
         B.    Plaintiffs' Claims Survive Because Defendants Rely On Distinguishable
             And Inapplicable Case Law …………………………………………..11

    III.    Plaintiff's Monell Claims Are Properly Before This Court ……………………..12

    IV.    Plaintiffs Have Sufficiently Alleged Property Interests …………………………13
         A.    Plaintiffs' Amended Complaint Alleges A Protected Property Interest ...13
         B.    Plaintiffs' Are Not Required To Allege That Defendants' Actions Did Not
             Bare Any Substantial Relationship To The Public Good ………………13

    V.    Plaintiffs Have Sufficiently Alleged Substantive Due Process Violation ……….15
         A.    Plaintiffs' Have Alleged Facts Sufficient To Establish Defendants' Acts
             Were Not For The Public Use …………………………………………...16
         B.    Plaintiffs Have Alleged Facts Sufficient To Establish That Defendants'
             Conduct Was Arbitrary …………………………………………………18

    VI.    Alternatively, Plaintiffs Should Be Allowed to Amend Their Complaint ……....21

CONCLUSION ………………………………………………………………………………21

# TABLE OF AUTHORITIES

**Cases**

*Action Apartment Association, Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020 (9th Cir. 2007) ……………………………………………………………..…….…….…4, 8, 17

*Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) ………………………………….…………4

*Association, Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020, 1025 (9th Cir. 2007) ....5

*Beary Landscaping, Inc. v. Ludwig*, 479 F.Supp.2d 857 (N.D. Ill. 2007) ………………..…16, 18

*Big Momma's Soul Kitchen v. Louisville-Jefferson County Metro Government*, 551 F.Supp.2d 620 (2008) ……………………………………………………………………………..……9, 12

*Bond v. Dunmire*, 473 N.E.2d 78, 87 (Ill. App. Ct. 1984) ……………………………………14

*Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564 (6th Cir. 2008) …………………………..…11

*City of Evanston v. City of Chicago*, 664 N.E.2d 291, 300-301 (Ill. App. Ct. 1996) (Appellate court decide the question based on evidence presented at trial) ………………………..…………14

*Colville v. City of Rochelle*, 268 N.E.2d 222 (Ill. App. Ct. 1970) (the court of appeals analyzed witness testimony and the entire record to determine whether the action was unreasonable, arbitrary, or oppressive) ……………………………………………………………………14

*County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) …………………………..…………15

*Crown Point Development v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007) …………...…4, 8

*Daniels v. Williams*, 474 U.S. at 331 ……………………………………………..……16, 17

*Davis v. Brown*, 851 N.E.2d 1198 (Ill. 2006) …………………………………………..…17

*Department of Public Works and Buildings v. Finks*, 139 N.E.2d 242 (Ill. 1956) …………..…..7

*Doherty v. City of Chicago*, 75 F.3d 318 (7th Cir. 1996) ………………………………5, 8, 14

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007) …………………………..3

*Finsel v. Cruppenink*, 326 F.3d 903 (7th Cir. 2003) ………………………………………20, 21

*Forseth v. Village of Sussex*, 199 F.3d 363 (7th Cir. 2000) ……………………………………6

*Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030 (7th Cir. 1987) ……………………..…3, 14

iii

*Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934 (7th Cir. 2004) …………………………….……7

*Hager v. City of West Peoria*, 84 F.3d 865 (7th Cir. 1996) …………………………….………..7

*Hammond v. Baldwin*, 866 F.2d 172 (6th Cir. 1986) …………………………….…………9

*Highland Development, Inc. v. Duchesne County*, 505 F.Supp.2d 1129 (D. Utah 2007) ………..6

*Landmark Land Co. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989) …………………….…………8

*Leatherman v. Tarrant County Narcotics Intelligencer and Coordination Unit*, 507 U.S. 163 (1993) …………………………………………………………………………..…..14

*Lewis*, 523 U.S. at 846 …………………………………………………………………15, 17

*Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005) ……………………………….…3, 4, 5, 8, 15

*Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991) ...8, 9, 11, 12

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir. 2007) …………………..…………3

*Popp v. City of Aurora*, 2000 WL 804689 (N.D. Ill. 2000) …………………………………..12

*Ryan v. Rosenstone*, 169 N.E.2d 360 (Ill. 1960) …………………………………...…………13

*Sapperstein v. Hager*, 188 F.3d 853 (7th Cir. 1999) ………………………………...……3

*Spencer v. National Railroad Passenger Corp.*, 141 F.Supp.2d 1147 (N.D. Ill. 2001) ………….3

*Superdawg Drive-In, Inc. v. City of Chicago*, 440 N.E.2d 890 (Ill. App. Ct. 1982) ……..…10, 12

*Terry v. Ohio*, 392 U.S. 1, 13 (1968) …………………………………………………19

*Warren v. City of Athens, Ohio*, 411 F.3d 697 (6th Cir. 2005) …………….…………5, 6, 8, 9, 12

*U.S. v. Garner*, 416 F.3d 1208 (10th Cir. 2005) ………………………………………...…19, 20

*U.S. v. Hougam*, 364 U.S. 310 (1960) …………………………………………...……21

*U.S. v. King*, 990 F.2d 1552 (10th Cir. 1993) …………………………………………………19

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| W/G KRISTINA 123 LLC, A DELAWARE LIMITED LIABILITY  COMPANY, W/G LCD, LLC, A  DELAWARE LIMITED LIABILITY COMPANY, W/G SPI LLC, A DELAWARE LIMITED LIABILITY COMPANY AND MICHAEL SPARKS, an Individual,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>THOMAS MELENA, ROLLING MEADOWS CITY MANAGER, STEVEN WILLIAMS, ROLLING MEADOWS POLICE CHIEF, UNKNOWN ROLLING MEADOWS POLICE OFFICERS and the CITY OF ROLLING MEADOWS<br><br>　　　　Defendants. | No.  08 cv 3462<br><br>JUDGE MANNING<br><br>MAGISTRATE JUDGE BROWN |

## PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

NOW COMES the Plaintiffs, W/G KRISTINA 123 LLC, A DELAWARE LIMITED LIABILITY COMPANY, W/G LCD, LLC, A DELAWARE LIMITED LIABILITY COMPANY, W/G SPI LLC, A LIMITED LIABILITY COMPANY and MICHAEL SPARKS, by their attorneys BLAKE HORWITZ, ELLIOT RICHARDSON, ERICA FAABORG, RACHELLE SORG, CLINTON IND and SEAN BAKER, and for Plaintiffs' Response to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, state the following:

<u>**STATEMENT OF FACTS**</u>

The Plaintiffs own the "12 Oaks at Woodfield" apartment complex in Rolling Meadows. (Amended Complaint At Law, Docket No. 61, August 27, 2008, ¶ 2.) This expansive suburban apartment complex consists of 34 acres and approximately 2000 residents live at the 12 Oaks at Woodfield complex (hereinafter "12 Oaks"). *Id.* ¶ 9. There are thirteen entrances that provide access to 12 Oaks.

The City of Rolling Meadows unilaterally blocked twelve of the thirteen entrances into 12 Oaks with concrete barricades on June 9, 2008. *Id.* ¶ 10. This action was taken without providing the complex owners notice or any hearing. *Id.* ¶¶ 32-37. Rolling Meadows established a police roadblock at the only remaining entrance into 12 Oaks.[1] *Id.* ¶ 10. This roadblock, which restricted access to Plaintiffs private property, was also established without providing the Plaintiffs any notice or a hearing. *Id.* ¶¶ 32-37.

The Defendants established an armed police checkpoint at the only remaining entrance/exit to 12 Oaks. *Id.* ¶¶ 10, 11. The Defendants stated purpose for establishing this armed police checkpoint was to distribute flyers to residents.[2] *Id.* ¶¶ 10, 11.

Plaintiffs' attorneys filed this action against the Defendants on June 17, 2008. *Id.* ¶ 15. The Plaintiffs also filed a motion for a temporary restraining order ("TRO") seeking to restrict the Defendants from barricading the twelve access points into 12 Oaks, and for the removal of the armed police checkpoint. *Id.* ¶ 15. Prior to the hearing on Plaintiffs' TRO, the Defendants capitulated and opened the entrances into 12 Oaks. *Id.* ¶¶ 17-19. However, significant damage

---

[1] Then Plaintiffs have alleged that 12 Oaks residents were interrogated and intimidated by the conduct of Rolling Meadows police officers. Indeed, residents reported feeling "like prisoners in their own homes." This claim is not brought by the residents of 12 Oaks, however, this illustrates the gravity of Defendants interference with Plaintiffs' property interests.

[2] In their motion to dismiss, the Defendants contend they barricaded the premises "as a result of criminal activity." However, that is not consistent with the Plaintiffs' allegations.

was already done. *Id.* ¶¶ 27-28. Moreover, the Defendants threaten a return of the barricades. *Id.* ¶ 24. Indeed, the Defendants' desire to transform Plaintiffs' private property into a "gated community" has not waned. *Id.* ¶ 25.

## STANDARD OF REVIEW

In ruling on a Motion to Dismiss, the court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "The [defendants] attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim , as set for the by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short statement of the claim showing the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*quoting* Fed.R.CIv.P. 8(a)(2)). The issue is not whether a plaintiff will ultimately prevail but whether she is entitled to offer evidence to support the claims." *Spencer v. National Railroad Passenger Corp.*, 141 F.Supp.2d 1147, 1149 (N.D. Ill. 2001) *quoting Sapperstein v. Hager*, 188 F.3d 853, 855 (7th Cir. 1999).

## ARGUMENT

I.    Plaintiffs Substantive Due Process Claims Are Ripe And Not Subsumed By The "Takings Clause"

Plaintiffs' have sufficiently alleged a claim that their Substantive Due Process rights have been violated. However, the Defendants seek to recast Plaintiffs claims for the purpose of bouncing this matter to state court. In doing so, the Defendants ignore the Supreme Court ruling in *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005). Plaintiffs have alleged substantive and

procedural due process claims against Defendants.  The Defendants jurisdictional arguments lack merit.

> A. *Plaintiffs May Bring a Substantive Due Process Claim Against Defendants*

The Plaintiffs have every right to bring their substantive due process claims in federal court.  The Supreme Court makes this crystal clear in *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005).  Indeed, the Supreme Court, Seventh Circuit and other Federal Circuit courts have recognized the right to bring Substantive and Procedural Due Process claims when government action has affected private land use.

In *Lingle*, the Supreme Court held that substantive due process claims that relate to the government's interference with private property exist independent of any takings claims. 544 U.S. at 543.  In that regard, Justice O'Connor held that the inquiry to whether allegations are sufficient to state a claim under the substantive due process clause, "is logically prior to and **distinct** from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose." *Id.* (emphasis added.)

The Ninth Circuit has recognized and applied the holding in *Lingle*, and has repeatedly held that there is the potential for a substantive due process claim where a land use action does not have a substantial relation to the public health, safety, or general welfare. *Crown Point Development v. City of Sun Valley*, 506 F.3d 851, 855 (9th Cir. 2007);[3] *Action Apartment*

---

[3] The Ninth Circuit recognized in *Crown Point* that *Lingle* specifically overruled *Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996).  In *Armendariz* the Ninth Circuit held that a land use decision that does not substantially advance legitimate state interests effects a takings.  The *Crown Point* holding recognized that the Supreme Court in *Lingle* specifically stated that the substantially advances test is not appropriate for determinng whether the government has effected a taking.  Furthermore, a substantive due process claim can be maintained if the plaintiff can show that the state action over its real property does not substantially advance a government interest.

*Association, Inc. v. Santa Monica Rent Control Board*, 509 F.3d 1020, 1025 (9th Cir. 2007). Indeed, the Takings Clause cannot remedy such a claim. See *Lingle*, 544 U.S. at 543.

In *Action Apartment*, the Ninth Circuit found no difficulty in recognizing that an alleged deprivation of rights in real property is a proper subject of substantive due process analysis. 509 F.3d at 1026. "An arbitrary deprivation of that right, thus, may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action." *Id.* The court then analyzed whether the plaintiffs had sufficiently alleged a viable substantive due process claim. *Id.* Noting that granting rights and affirmative defenses to illegal occupants of buildings does not serve any legitimate governmental objective, particularly where the state does not recognize illegal occupants as tenants, does not serve any legitimate governmental objective. *Id.* Accordingly, the Ninth Circuit found that the plaintiffs challenges to the ordinance granting such rights stated a viable substantive due process theory. *Id.*

Even before the Supreme Court's decision in *Lingle,* the Seventh Circuit recognized the "potential for a substantive due process claim in the context of land use decisions that are arbitrary and unreasonable, bearing no substantial relationship to the public health, safety or welfare." *Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996).[4]

Furthermore, the Sixth Circuit Court of Appeals analyzed the sustainability of a substantive due process claim in a case with facts similar to the facts at hand. *See Warren v. City*

---

[4] In *Doherty*, the Seventh Circuit stipulated that a plaintiff not only show that the land use decision was arbitrary and irrational, but also either a separate constitutional violation or the inadequacy of state law remedies. 75 F.3d at 325. However, this stipulation is not applicable to the case at hand. The stipulation enumerated by the Seventh Circuit is based in the recognition that a disciplined jurisprudence is required to prevent the Federal Courts from being boards of zoning appeals. *Id.* Here, there is no zoning or ordinance that is being challenged. Rather, at issue are measures of the Village of Rolling Meadows and its Police Department of barricading the entrances to Plaintiffs' property that have deprived Plaintiffs' interest in their property.

Furthermore, in *Lingle* the Supreme Court did not require any allegations of a separate constitutional violation or the inadequacy of state law remedies. 544 U.S. at 542 The *Lingle* Court found that a Substantive Due Process violation could be sustained in the land use context by showing only that it fails to serve any legitimate governmental objective or is arbitrary. 544 U.S. at 543.

*of Athens, Ohio*, 411 F.3d 697 (6th Cir. 2005). In *Warren*, the city placed barriers on the public roads adjacent to a Dairy Queen drive thru, which prevented customers from using the drive thru. *Id.* at 700. The plaintiffs brought actions alleging, *inter alia*, violations of their substantive and procedural due process rights. *Id.* at 704. The Sixth Circuit declined to consider the "particularized action[s of the city] involved in this case" as *de facto* zoning that would require the case being analyzed under the Takings Clause. *Id.* at 707-708. Furthermore, the Sixth Circuit found that the plaintiffs could assert a substantive due process claim. *Id.* at 707.

B.     *The Cases Cited By Defendants Are Inapplicable And Do Not Apply To Subsume Plaintiffs' Claims Under The Takings Clause*

The Defendants cite four primary cases to support their assertion that Plaintiffs' Substantive Due Process claims are subsumed to the Takings Clause. However, these cases are factually dissimilar to Plaintiffs' alleged facts and are not controlling.

In *Highland Development, Inc. v. Duchesne County*, 505 F.Supp.2d 1129, 1134 (D. Utah 2007), the plaintiffs purchased property to develop into residential use. The plaintiffs alleged they were subject to a "five year course of arbitrary and discriminatory conduct" by the government's application of building codes. *Id.* This alleged government conduct prevented the plaintiffs from developing the land at the speed they believed they were entitled to so develop, thus violating their Substantive Due Process rights. *Id.* Here Plaintiffs' allegations do not involve the development of land or the arbitrary application of building code provisions.

In *Forseth v. Village of Sussex*, 199 F.3d 363, 365 (7th Cir. 2000), the plaintiffs planned to develop a plat of land that was next to land owned by the Village president. The Village president eventually forced plaintiffs to convey a buffer strip of their land to him personally, at a reduced fee, which plaintiffs alleged violated their Substantive Due Process rights. *Id.* at 369. The court found that the Substantive Due Process claim was merely a takings claim with the

wrong label. *Id.* at 370. Here Plaintiffs have not alleged that any part of their land was required to be conveyed to any party.

In *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 939-41 (7th Cir. 2004), the plaintiffs owned riparian rights to a creek/river that was flooded with sludge when the Department of Natural Resources opened a damn upstream allowing tons of sediment to flow through the plaintiffs property. The court noted that it has invariably found a taking when faced with a constitutional challenge to a permanent physical occupation of real property. *Id.* at 957. Where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking within the meaning of the Constitution. *Id.* Here, Plaintiffs have not alleged an actual physical invasion of their land.

Lastly, in *Hager v. City of West Peoria*, 84 F.3d 865, 867 (7th Cir. 1996), the plaintiffs challenged a city ordinance that regulated the use of trucks along the only road that accessed the property on which their businesses were located. The plaintiffs alleged that such a regulation was a takings in that it inversely condemned their property by limiting the potential industrial and commercial use of the property. *Id.* at 868. Here, Plaintiffs do not allege that the acts of Defendants amounted to a takings.

These cases do not support Defendants' assertion that Plaintiffs' Claims are not ripe, and do little more than show that under some circumstances a Substantive Due Process Claim brought in the land use context is actually a claim under the Takings Clause.[5] Defendants do not analogize these factually dissimilar cases to the facts of the case at hand. Rather, they merely rely on their own asserted and unsubstantiated conclusion that all situations in which property is

---

[5] Defendants also cite *Department of Public Works and Buildings v. Finks*, 139 N.E.2d 242 (Ill. 1956). However, this case was decided long before the cases that will dictate the outcome of this case, and has no precedential value.

diminished in value by governmental action forces the claim to be subsumed by the Takings Clause. This conclusion is simply incorrect.

The Supreme Court in *Lingle*, the Ninth Circuit in *Crown Point* and *Action Apartment* the Seventh Circuit in *Doherty*, and particularly the Sixth Circuit in *Warren*, have all found that a Substantive Due Process claim based in the deprivation of property rights is ripe for consideration in federal court. Pursuant to these cases, here Plaintiffs Substantive Due Process claims are ripe for adjudication before this Court.

II.     Plaintiffs' Procedural Due Process Claims Are Ripe

Plaintiffs emphasize that they have ***not brought takings claims*** against Defendants. Accordingly, Plaintiffs' Procedural Due Process claim is ripe for adjudication before this Court. Moreover, the Plaintiffs have alleged that the failure to provide them notice and a hearing caused distinct, concrete injuries in this case. Indeed, the Defendants' failure to provide notice and a hearing before placing cement barricades around Plaintiffs' property deprived them of procedural due process and caused Plaintiffs to incur damages. (Amended Complaint, ¶¶ 27-28, 39, 46, 53, 60.)

A.      *Plaintiffs' Procedural Due Process Claims Are Instantly Cognizable In Federal Court*

A procedural due process claim is instantly cognizable in federal court. Accordingly, even if this Court finds that the Supreme Court holding in *Williamson* acts to delay Plaintiffs' Substantive Due Process claims, Plaintiffs' Procedural Due Process claims still survive the Defendants' Motion to Dismiss. *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991); *Landmark Land Co. v. Buchanan*, 874 F.2d 717 (10th Cir. 1989). In *Nasierowski*, the plaintiff was deprived interest in his property when the City Council unilaterally changed the zoning laws without affording him an opportunity to be heard regarding

the change. *Id.* at 892-93. The Sixth Circuit upheld its prior holdings, finding that where the injury is the *infirmity of the process*, neither a final judgment nor exhaustion of administrative remedies is required. *Id.* at 894. (*citing Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1986). In a procedural due process claim, "the allegedly infirm process is an injury in itself." *Id.* The Sixth Circuit explained in *Nasierowski* that it is the injury stemming from the deprivation of procedural due process that is immediately sustained and concretely felt, notwithstanding the absence of a 'final' decision from the City. *Id.* at 894.

In *Warren*, the Sixth Circuit cited and applied *Nasierowski* to facts similar to those in the case at hand, where the city placed a barricade on public property that prevented customers from using a Dairy Queen drive thru. 411 F.3d at 700. The Sixth Circuit distinguished *Williamson* and specifically found the plaintiffs "procedural due process claim is not ancillary to their takings claim, but addresses a separate injury-the deprivation of a property interest without a deprivation hearing." 411 F.3d at 708 (*citing Nasierowski*, 949 F.2d at 893-95 for its distinction between procedural due process claims and other varieties of constitutional grievances stemming from land use decisions.) The Sixth Circuit, relying on *Nasierowski* went on to find that the plaintiffs' procedural due process rights were violated. *Warren*, 411 F.3d at 710.

The facts of this case are also similar to the facts in *Big Momma's Soul Kitchen v. Louisville-Jefferson County Metro Government*, 551 F.Supp.2d 620 (2008). In *Big Momma's*, the plaintiffs alleged their procedural due process rights were violated when the government implemented a plan that included an "overt and aggressive police presence, severe limitations on access to roadways…through a system of road blocks and 'authorized passes' necessary for ingress to the sector, and a near complete restriction of traffic and pedestrian flow along the streets, parkways and parks of [the area near the restaurant]." 551 F.Supp2d at 623. The

plaintiffs claimed they did not receive notice of the governmental policy and action to implement the plan, and the plan was not subject to a public hearing where the plaintiffs could give input on the plan. *Id.* at 625.  Based on these facts, the court found that the plaintiffs stated a procedural due process claim upon which relief could be granted.[6] *Id.*

Furthermore, in *Superdawg Drive-In, Inc. v. City of Chicago*, 440 N.E.2d 890, 891 (Ill. App. Ct. 1982), the plaintiff brought a claim for violation of procedural due process rights and money damages resulting from the city erecting a barricade that prevented the use of an alley behind the property by Superdawg customers.  The restaurant appealed from the circuit court's finding that the city acted lawfully in erecting the barricade. *Id.*  The Court of Appeals found that "it is necessary to inquire whether the City provided the palintiff with adequate notice of an alleged violation of an ordinance or regulation…" *Id.* at 894.  The court then remanded the cause to circuit court where such an inquiry could be made.

The court in *Superdawg* recognized that the injury from a procedural due process violation is immediately sustained when the deprivation of life, liberty or property is not preceded by notice and an opportunity for hearing is not given. *See Id.* at 893.  Thus the injury was sustained and actionable despite the plaintiff's other claims that the city's act of erecting a barricade deprived him of his property interest resulting in money damages.  As in *Superdawg*, here, Plaintiffs immediately sustained damages stemming from the violation of their procedural due process rights.  Such a claim is actionable and independent from any claim that they incurred monetary damages from a deprivation of their property interest.  Accordingly, as in *Superdawg*, Plaintiffs' procedural Due Process Claim must survive.

---

[6] After finding that the plaintiffs sufficiently alleged a procedural due process claim, the court noted that the plaintiffs could still articulate whether they were also proceeding with a substantive due process claim in addition to their procedural claim.

In the case at hand, Plaintiffs have been subject to the same infirmity of process as the plaintiff in *Nasierowski*. Plaintiffs were not given notice or afforded a hearing prior to the governmental deprivation of their property rights. (Amended Complaint, ¶¶ 27-28, 39, 46, 53, 60.) When Plaintiffs were denied such notice and hearing prior to deprivation of their property interest, the process was the injury itself, and the deprivation of such process was immediately sustained and concretely felt.

> B.     *Plaintiffs' Claims Survive Because Defendants Rely On Distinguishable And Inapplicable Case Law*

In their brief, Defendants' attempt to distinguish *Nasierowski* from the case at hand, pointing out that the plaintiff in *Nasierowski* did not allege a takings. (Memorandum, p. 8.) Defendants' do however concede the language in *Nasierowski* that the procedural due process claim can amount to a distinct concrete injury. (Memorandum page 8.) Defendants' attempt at distinguishing *Nasierowski* from the case at hand is simply unavailing. First, Plaintiffs' here, as with the plaintiffs in *Nasierowski*, have not alleged a takings claim. Furthermore Plaintiffs here, as in *Nasierowski* do allege separate causes of action arising under the Fourteenth Amendment. *See Nasierowski*, 949 F.2d at 893, note 4. Lastly, in *Nasierowski*, as here, the plaintiff's claims were associated with a deprivation of property interest. *Id.* at 892-93.

Furthermore, Defendants assert that *Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 572 (6th Cir. 2008) is more applicable to the facts here than *Nasierowski*, however, *Braun* is in fact much less applicable. In *Braun,* the court distinguished *Nasierowski*, noting that *Nasierowski* did not involve a situation where the plaintiff was afforded notice and a hearing. 519 F.3d at 572. In *Braun*, the Sixth Circuit found that such a hearing "undoubtedly occurred." *Id.* Here, Plaintiffs allege that they were never afforded notice and hearing. (Amended Complaint, ¶¶ 39, 46, 53, 60.) The case at hand is simply not similar to *Braun*. Furthermore, as in *Nasierowski*, here the

infirmity of process was immediately felt and concretely sustained by Plaintiffs when Defendants deprived them of a property interest without notice or hearing.

The other cases cited by Defendants do not support their assertion that Plaintiffs' Procedural Due Process claims should be dismissed. None of the cases are applicable or dispositive of Plaintiffs' procedural due process claims. The Defendants rely on *Popp v. City of Aurora*, 2000 WL 804689 (N.D. Ill. 2000), however such reliance is simply misplaced. In *Popp*, the beneficiaries of a trust brought suit against the City of Aurora. *Id.* at 2. The beneficiaries alleged that over a period of twenty years, the City of Aurora engaged in numerous actions which constituted takings under the Fifth Amendment. *Id.* at 3. Indeed, the Plaintiffs brought *five* claims under the Takings Clause and one corollary procedural due process claim. *Id.*

Here, as stated on numerous occasions, Plaintiffs have not brought a takings claim. Furthermore, this case does not involve the governmental expansion onto property or "extractions" of private property. This case involves the Defendants blockade of Plaintiffs' private property without providing notice and a hearing. *Popp* is simply inapplicable to this action and does not support Defendants Motion.

Therefore, as in *Nasierowski*, *Warren*, *Big Momma's* and *Superdawg*, this Court should find that Plaintiffs' Procedural Due Process rights are ripe for adjudication.

III.    Plaintiff's Monell Claims Are Properly Before This Court

Plaintiffs' have sufficiently alleged that their Procedural and Substantive Due Process rights have been violated and, per the arguments above, have defeated Defendants' Motion to Dismiss on ripeness grounds. Defendants' only argument that Plaintiffs' Monell claims should be dismissed is that they are not ripe because they are based in allegations Defendants' unsuccessfully assert are Takings Claims. In short, Defendants' argument that Plaintiffs' Monell

claims should be dismissed is contingent on this Court finding that Plaintiffs' claims are not ripe. As Defendants are unsuccessful in their assertion that Plaintiffs' claims are not ripe, per the arguments above, so to are they unsuccessful in their assertion that Plaintiffs' Monell claims are not ripe. Accordingly, Plaintiffs' Monell claims should survive Defendants' Motion to Dismiss.

IV.     Plaintiffs Have Sufficiently Alleged Property Interests

Plaintiffs have alleged that each of the Defendants blocked access to 12 Oaks in a way that mandated travel through a police checkpoint in order to enter the property. (Amended Complaint, 41, 48, 55, 62.) Plaintiffs have also alleged that this conduct has had an adverse and detrimental impact on the property. (Amended Complaint, 41, 48, 55, 62.)

A.      *Plaintiffs' Amended Complaint Alleges A Protected Property Interest*

Defendants certainly recognize that these allegations have sufficiently alleged a protected property interest. (Memorandum, Docket No. 56, August 15, 2008, page 12.) "Plaintiffs appear to allege a constitutionally protected interest in access to their property[.]" *Id.* at 12. Furthermore, Defendants actually cite case law that supports a finding that Plaintiffs have a protected property interest in access to their property when they state that "[u]nder Illinois law, Plaintiffs have a right of access to their property as an incident of ownership." *Id.* at 12, *quoting Ryan v. Rosenstone*, 169 N.E.2d 360 (Ill. 1960). With these very assertions, Defendants concede that Plaintiffs have sufficiently alleged a cognizable property interest. Accordingly, Plaintiffs' Procedural and Substantive Due Process claims should not be dismissed for failure to allege a protected property interest.

B.      *Plaintiffs' Are Not Required To Allege That Defendants' Actions Did Not Bare Any Substantial Relationship To The Public Good*

Defendants appear to request this Court address whether Plaintiffs have alleged facts "sufficient to establish that Defendants' actions did not bear any substantial relationship to the

public good." (Memorandum, page 14). However, "there is no heightened standard of pleading for section 1983 cases against local governments." Doherty, 75 F.3d at 326, *citing Leatherman v. Tarrant County Narcotics Intelligencer and Coordination Unit*, 507 U.S. 163 (1993).

Defendants apparently forget the current procedural posture, and seek to have this Court adjudicate the merits of Plaintiffs' property interest on the basis of the allegations in Plaintiffs' Amended Complaint. This is simply not the standard when considering a motion to dismiss. At this stage, the Defendants can only attack the sufficiency of Plaintiffs' Amended Complaint, and cannot set or alter the terms of the dispute. See *Gomez*, 811 F.2d at 1039. Defendants must demonstrate that Plaintiffs' claim, as set forth in their Amended Complaint is without legal consequence. *Id.* In fact, Defendants have cited case law supporting Plaintiffs' legally protected property interest. (Memorandum, page 12.) Considering these principles and Defendants' concession, this Court simply should not delve into the fact specific inquiry of whether Defendants' actions bore any substantial relationship to the public good.

However, even if the Court deems it necessary to analyze the cases cited by Defendants, it will find that they do little but highlight the fact specific inquiry required to determine whether Defendants' actions bore any substantial relationship to the public good. *See City of Evanston v. City of Chicago*, 664 N.E.2d 291, 300-301 (Ill. App. Ct. 1996) (the court decided the question based on evidence presented at trial); *Colville v. City of Rochelle*, 268 N.E.2d 222 (Ill. App. Ct. 1970) (the court of appeals analyzed witness testimony and the entire record to determine whether the action was unreasonable, arbitrary, or oppressive).[7]

---

[7] Defendants also quote *Bond v. Dunmire*, 473 N.E.2d 78, 87 (Ill. App. Ct. 1984) to support heir assertion that the streets and sidewalks are held in trust by the municipality for public use, and the right to their access is not absolute. However, the holding in *Bond* does not support or justify the actions taken by the Village of Rolling Meadows or its Police Department. *Bond* clarifies the language quoted by Defendants, clearly stating that the streets and sidewalks are held in trust for the public, and under the control, supervision and dominion of the city "for preserving them and promoting their **intended use**." *Id.* (emphasis added.) Under no circumstances can the actions of the Defendants, as those actions are alleged in Plaintiffs' Amended Complaint, be considered promoting the streets and sidewalks for

Defendants have conceded that Plaintiffs' have alleged a protected property interest under Illinois law. Therefore, Plaintiffs' Procedural and Substantive Due Process claims should not be dismissed for failure to allege a protected property interest.

V.    Plaintiffs Have Sufficiently Alleged A Substantive Due Process Violation

Plaintiffs allege that Defendants "took control and dominated the 12 Oaks at Woodfield complex." (Amended Complaint, ¶ 10.) Every entrance to 12 Oaks but one was barricaded and, at the only remaining entrance, Defendants established an armed police checkpoint. *Id.* Inhabitants and visitors to 12 Oaks were only permitted entrance if they passed through the armed police checkpoint, at which time they would be stopped and subject to police interrogation. *Id.* The Defendants demanded personal identification, asked where the individuals lived, and the duration of their stay at 12 Oaks. *Id.* Residents of 12 oaks reported feeling "like prisoners in their own homes," and there was great upheaval at 12 Oaks. Id. ¶ 14. Furthermore, the barricades and police checkpoint is merely a pretext. *Id.* ¶ 11.

In *Lingle*, the Supreme Court held that "if a government action is found to be impermissible-for instance because it fails the "public use" requirement [of the takings clause] or is so arbitrary as to violate due process-that is the end of the inquiry. No amount of compensation can authorize such action." 544 U.S. at 543. "The due process clause is intended, in part, to protect the individual against 'the exercise of power without any reasonable justification the service of a legitimate governmental objective." *Id.* at 542, *quoting County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

"[T]he Due Process Clause was intended to prevent the government officials from abusing [their] power, or employing it as an instrument of oppression." *Lewis*, 523 U.S. at 846.

their intended use. Placing on public property barricades and police checkpoints that prevent ingress and egress to private property are not acts that preserve the streets and sidewalks and promote them for their intended use. This case does not support Defendants' position.

*(citations omitted.)* The substantive due process guarantee protects against governmental power arbitrarily and oppressively exercised." *Id.* (*citing Daniels v. Williams*, 474 U.S. 327, 331 (1986).) Substantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights 'implicit in the concept of ordered liberty.' *Id.* at 847, (citations omitted).

A.   *Plaintiffs Have Alleged Facts Sufficient To Establish That Defendants' Conduct Was Arbitrary*

There is no state interest that justifies an act of turning an individuals property into a quasi police state. Here, the Village of Rolling Meadows and its police barricaded 2000 residents from their private property, preventing them to enter without being 'stopped' and subject to police interrogation. Such an act may be routine in a communist or other socialist society that freely sacrifices individual freedoms for the benefit of state interests. However, cordoning off private property by the police and subjecting the residents and owners to interrogation, merely for entering the property are acts that should not be tolerated in United States of America and is not permitted under the Constitution.

It may be more convenient for the government to erect blockades of large sections of private property to fulfill a state objective, however, convenience of the state at the expense of individual freedoms has never been adequate to sustain government action. Defendants' conduct, as alleged by Plaintiffs, shocks the conscience and is sufficiently egregious to be arbitrary. The Defendants' acts violated the norms that people traditionally view as baseline benchmarks of "ordered liberty." *Beary Landscaping, Inc. v. Ludwig*, 479 F.Supp.2d 857, 874 (N.D. Ill. 2007).

The arbitrary and egregious nature of Defendants' actions is further established by Plaintiffs' allegation that Defendants' actions were pretextual. (Amended Complaint, ¶ 11.) The

pretext alleged is that Defendants' erection of barriers and unbridled police presence was an intentional act designed to depress the value of Plaintiffs' property to allow Defendants to acquire the property at a reduced price in a future eminent domain proceeding. At approximately the same time Defendants barricaded Plaintiffs' property and established a permanent police presence, they also approved a Tax Incremental Finance plan that would be used to fund the purchase of 12 Oaks for condemnation and subsequent use by the Village.

Conduct that intends to injure, in some way unjustifiable by an government interest, is the sort of official action most likely to rise to the conscience shocking level. *Lewis*, 523 U.S. at 834, *citing Daniels v. Williams*, 474 U.S. at 331 ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.") "In order for Government action to be so egregious that it shocks the conscience, said conduct must be intended to injure in a way that cannot be justified by any governmental interest." *Lewis*, 523 U.S. at 834.

The Illinois Supreme Court has found that when the real purpose of state action is to intentionally depress the value of property in anticipation of future land acquisition, such acts are unconstitutional. *Davis v. Brown*, 851 N.E.2d 1198, 1208 (Ill. 2006). Furthermore, the court found that "it is an illegitimate state interest to purposefully depress property values in anticipation of future land acquisition[.]" *Id.*, *See also Action Apartment*, 509 F.3d at 1026 (the Ninth Circuit sustained a claim for violation of substantive due process rights where state action did not serve a legitimate governmental objective.)

Plaintiff has alleged sufficient facts to show that The Village of Rolling Meadows and its police force intended to injure Plaintiffs. Plaintiffs have alleged that Defendants barricaded every entrance and exit to Plaintiffs' property, forcing residents and visitors to Plaintiffs'

property to pass through a police checkpoint whenever they wanted to leave the property. Plaintiffs have further alleged that the stated purpose for such action, to distribute flyers and inform residents of safety measures, was merely a pretext. Here, Plaintiffs elaborate on the exact nature of that pretext that Defendants acted to intentionally depress Plaintiffs' property value in anticipation of future acquisition.

The egregious and arbitrary nature of Defendants' conduct is evidenced by the Illinois courts declaring such acts to be in pursuit of an illegitimate state interest and unconstitutional. Plaintiffs' allegations of these acts are sufficient to establish a claim that Defendants violated Plaintiffs' Substantive Due Process rights. The City of Rolling Meadows act of erecting barricades violated Plaintiffs' Substantive Due Process Rights as it was an arbitrary pretext for an impermissible motive. *Beary Landscaping, Inc. v. Ludwig*, 479 F.Supp.2d 857, 874 (N.D. Ill. 2007). Accordingly, Defendants Motion to Dismiss should be denied.

B.    *Plaintiffs Substantive Due Process Claims Survive Regardless Of Any Asserted Justification Under The Community Caretaking Function*

Defendants appear to claim that their actions are justified because they "believed that there was criminal activity occurring at the complex and that it would be in the best interest of the city to establish a police presence at the complex." (Memorandum page 15-16.) However, this justification should not be considered by the Court in ruling on this motion to dismiss. Plaintiffs allege that the "stated purpose behind this police action is to cause residents to receive a flyer advising them of public meetings…" (Amended Complaint ¶ 11.) In a motion to Dismiss, the court takes the allegations of Plaintiff as true. Therefore, any statement of Defendants that the reason for the police presence was other than that stated by Plaintiff is irrelevant to the Court's consideration of this Motion. Second, Plaintiffs have already established that the

Amended Complaint sufficiently alleges a claim for violation of their Substantive Due Process rights. Accordingly, Defendants attempted justification is moot.[8]

Even if this Court finds Defendants' attempt to justify their actions warranted consideration, none of the cases cited by Defendants support a finding that barricading private property and subjecting residents and visitors of that property to armed police interrogation are a matter of community caretaking. In *U.S. v. Garner*, 416 F.3d 1208, 1211 (10th Cir. 2005), the police received an anonymous tip that the defendant was in a field near an apartment complex, half slumped over and unconscious for several hours. Based on this tip, the police approached the individual and told him not to leave so that he may be examined by the paramedics already on the scene. *Id.* at 1212. The Tenth Circuit found that these facts were reasonable grounds to believe that the individual might be in need of medical attention, and warranted directing the individual to return to be medically examined as a community caretaking function.[9] *Id.*

The holding in *Garner* does not support Defendants position that the Village of Rolling Meadows and its police were acting pursuant to their community caretaking function. A police officer approaching an individual who, based on a tip, may be in need of medical attention may allow for detention of that individual as a police community caretaking function. See *Garner*, 416 F.3d at 1212. However, such a function could in no way lead a person to believe that

---

[8] Furthermore, Defendants attempt to justify their actions as a community caretaking function appears only to preempt an assertion by Plaintiffs that they have standing to assert the Fourth Amendment rights of 12 Oaks residents. However, Plaintiffs have never claimed that they have standing to assert the 12 Oaks residents Fourth Amendment rights.

[9] The court also noted that "[l]ike an investigative detention for law enforcement purposes, such a community caretaking detention must be based upon 'specific and articulable facts which…reasonably warrant intrusion into the individual's liberty." *Garner*, 416 F.3d at 1213. *quoting U.S. v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) *quoting Terry v. Ohio*, 392 U.S. 1, 13 (1968). If Defendants are asserting that their interrogation of individuals was an act pursuant to the community caretaking function, they must justify each 'stop' with specific and articulable facts which…reasonably warrant intrusion into the individual's liberty. Defendants have not and cannot justify the detention and interrogation of every individual that entered the complex under the police community caretaking function.

barricading every entrance to private property, and forcing upon every person desiring to enter said property police interrogation is a community caretaking function of the police.

Defendants also cite *Finsel v. Cruppenink*, 326 F.3d 903, 905 (7th Cir. 2003) to support their proposition that the Village of Rolling Meadows police were merely partaking in their community caretaking function. In *Finsel*, a motel manager called the police officer to request assistance because one of the motel guests had allegedly parked his truck in the lot without permission. *Id.* When the police officer arrived he knocked on the guests motel room door, but received no response. *Id.* The officer then broke down the door and apprehended the guest. *Id.* The Seventh Circuit found that kicking in the guests motel room door could not be justified by the community caretaking function when the issue was merely having the guests' truck removed from the parking lot. *Id.* at 908.

However, *Finsel* actually bolsters Plaintiffs' claims that the behavior of the Village of Rolling Meadows violates the Constitution. A police officer should know that even though a motel guests truck may be improperly parked in the motel lot, the community caretaking function does not then justify breaking down a door and forcibly entering the guests motel room. Similarly, the Village of Rolling Meadows and its police officers should know that handing out flyers to residents does not justify erecting barricades that prevent owners and residents from entering their private property without being subject to a 'stop' and police interrogation. *Finsel* and *Garner* support the Plaintiffs' assertion that their constitutional rights were violated.

Irrespective of whether *Garner* and *Finsel* support the Defendants' or Plaintiffs' position, both case make clear that a determination of whether Village of Rolling Meadows and its police were justified in their actions pursuant to the community caretaking function is premature at this stage of the proceeding. In *Garner*, the Tenth Circuit considered the detailed factual findings of

the District Court in making its determination that the police were acting pursuant to their community caretaking function. 416 F.3d at 1212. Similarly, in *Finsel*, the Seventh Circuit considered the entire record, including deposition testimony of the parties, in making its determination regarding applicability of the community caretaking function. 326 F.3d at 905-908. If nothing else, these cases cited by Defendants establish that there is an issue of fact as to whether Defendants were justified in their actions of erecting barricades around 12 Oaks, and 'stopping' and interrogating the residents and visitors to 12 Oaks.

Defendants' cited cases simply do not support their assertion that Plaintiffs' Substantive Due Process claims should be dismissed. Accordingly, Defendants' Motion To Dismiss should be denied.[10]

VI.      Alternatively, Plaintiffs Should Be Allowed to Amend Their Complaint

For all the reasons argued above, Plaintiffs have sufficiently pled their claims to defeat Defendants' Motion to Dismiss. However, in the alternative, if this Court disagrees, Plaintiffs request leave to amend their Complaint, pursuant to FRCP Rule 15(a), to amend any aspect of Plaintiffs' Amended Complaint deemed deficient by this Court. *See* Fed.R.Civ.P. 15(a) (leave to amend a pleading shall be "freely given when justice so requires."); *see also, U.S. v. Hougam*, 364 U.S. 310, 316-17 (1960).

## CONCLUSION

WHEREFORE, for the above stated reasons, Plaintiffs' respectfully request this Honorable Court deny Defendants' Motion To Dismiss Plaintiffs' Amended Complaint At Law.

---

[10] Plaintiffs have alleged facts sufficient to state claims that their procedural and substantive due process rights have been violated. Therefore, Counts I through VIII of Plaintiffs' Amended Complaint survive Defendants' Motion to Dismiss. Accordingly, Defendants' argument that Counts IX and X of Plaintiffs' Amended Complaint should be dismissed is moot, as it is contingent on this Court finding that Counts I through VIII should be dismissed. Counts IX and X of Plaintiffs' Amended Complaint survive Defendants' Motion to Dismiss.

In the alternative, should this Court determine that Plaintiffs' Amended Complaint is insufficient, Plaintiffs respectfully request this Court grant Plaintiffs leave to amend and cure any defects.

Respectfully Submitted,

s/ Clinton Ind
Clinton Ind
One of the Attorneys for Plaintiffs

**HORWITZ, RICHARDSON & BAKER LLC**
**Two First National Plaza**
20 S. Clark St. Suite 500
Chicago, Illinois 60603
Ph (312) 676-2100
Fax (312) 372-7076