IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| W/G KRISTINA 123 LLC, W/C LCD, LLC, W/G SPI, LLC, and MICHAEL SPARKS, ROBERT GURLEY, and SUSAN BUCK,<br>    Plaintiffs,<br><br>v.<br><br>THOMAS MELENA, STEVEN WILLIAMS, UNKNOWN ROLLING MEADOWS POLICE OFFICERS and the CITY OF ROLLING MEADOWS,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 08 C 3462 |

## MEMORANDUM AND ORDER

The owners of the 12 Oaks at Woodfield apartment complex in Rolling Meadows assert that the City of Rolling Meadows, by hook or by crook, is trying to ruin the reputation of the complex to prevent it from being converted to condominiums. According to the plaintiffs (the owners of the complex and two residents), Rolling Meadows' goal is to maximize the chance that the property will be converted to a mixed commercial and residential development that would provide a significant amount of additional tax revenues.

The court previously dismissed the prior version of the complaint with leave to replead. The defendants' motion to dismiss the second amended complaint is before the court. For the following reasons, the owners of the complex have failed to state a colorable due process or equal protection claim so these counts are dismissed and the court declines to exercise supplemental jurisdiction over the owners' state law claims. The Fourth Amendment claims brought by the residents shall proceed, and the court will exercise supplemental jurisdiction over

the requests for indemnification and for relief under a respondeat superior theory as to these plaintiffs.

I.      **Background**

The following facts are taken from the plaintiffs' complaint, and are deemed to be true for purposes of the motion to dismiss.

    A.      **The Parties**

Plaintiffs W/G Kristina 123 LLC, W/C LCD, LLC, and W/G SPI, LLC own an apartment complex known as 12 Oaks at Woodfield, and the managing member of each of these entities is plaintiff Michael Sparks. This court will adopt the parties' convention of referring to this group of plaintiffs as the "Sparks plaintiffs." Plaintiffs Robert Gurley and Susan Buck have resided at the 12 Oaks at Woodfield complex for approximately three years. Defendant Thomas Molina was the Rolling Meadows city manager until approximately December of 2008. Defendant Steven Williams is the Rolling Meadows police chief. The plaintiffs also filed suit against the City of Rolling Meadows and unknown police officers.

    B.      **The 12 Oaks at Woodfield**

Sparks has purchased many large apartment complexes and converted them into condominiums. He follows the convention of naming his conversions the "12 Oaks at [city name]," such as the 12 Oaks at Arlington Heights, or the 12 Oaks at Northbrook. In 2004, the plaintiff LLC entities controlled by Sparks purchased a large apartment complex in Rolling Meadows known as Woodfield Gardens, and Sparks renamed it the 12 Oaks at Woodfield. The complex contains 692 units in nineteen buildings spread out over approximately thirty-five acres, and has approximately 2,000 residents.

### C. Plans to Convert the 12 Oaks at Woodfield

After Sparks' companies purchased the complex, defendant Melena (who was Rolling Meadows' city manager at the time) contacted Sparks, indicated that Rolling Meadows wanted the property to be converted to a mixed commercial and residential project to maximize tax revenues, and stated that the City of Rolling Meadows would make things very difficult for him if he carried out his plan of converting the apartment complex to condominiums. Sparks felt threatened and thus negotiated a contract to build a mixed use project containing retail space, a hotel, condominium units, and senior housing. Rolling Meadows sought to advance this project by formulating a land plan and attempting to develop a tax increment financing ("TIF") district, which was necessary to finance the project.

In the Fall of 2008, Sparks's redevelopment plan fell through when the prospective commercial developer pulled out due to the downturn in the real estate market. This caused Sparks to revisit his original concept of converting the apartment complex to condominiums. Rolling Meadows, on the other hand, remained optimistic that a mixed use redevelopment project could come to fruition once the economic climate improves. Since any conversion to condominiums would block the mixed use project, Rolling Meadows remained adamantly opposed to the idea of converting the apartments into condominiums.

According to the plaintiffs, the defendants responded by embarking on a plan of harassment, intimidation, and economic oppression to depress the value of the apartment complex and prevent Sparks from converting it to condominiums. To further this plan, the defendants began selectively enforcing the building code at 12 Oaks at Woodfield and issued

numerous citations.[1]  Rolling Meadows also passed an ordinance prohibiting parking on a nearby road that had historically been used to accommodate the parking needs of residents and guests and began to aggressively ticket cars parked on that road.  In addition, Rolling Meadows passed ordinances requiring two parking spaces within 300 feet of any entrance to a building and requiring sprinkler retrofitting for new conversions.

In addition, the defendants set up barriers and police checkpoints at entrances into the complex and intimated to the media that this was necessary to address a crime wave.  The defendants voluntarily removed the barriers after this suit was filed, but the defendant officers have told Sparks that the barriers may be replaced in the future.  Moreover, the plaintiffs allege that the barriers created extensive negative publicity that harmed the reputation of the 12 Oaks communities and defamed Sparks.

Finally, Rolling Meadows imposed a localized property tax known as a special service area tax on the plaintiffs' property and three adjacent properties to fund road improvements.  Pursuant to the special service area tax, the plaintiffs were liable for $612,000 in additional taxes for the 2008 tax year.  The plaintiffs allege that Rolling Meadows did not in fact intend to make the improvements that were to be funded by the tax, and thus challenged the imposition of the special service area tax in an action brought in the Circuit Court of Cook County.  That action is is currently pending.

---

[1] In the interests of completeness, the court notes that it appears that the plaintiffs have filed suit in state court challenging some of the building code violations.

### D. The Plaintiffs' Second Amended Complaint

The court dismissed the prior version of the complaint with leave to replead. The plaintiffs' second amended complaint is currently before the court. It asserts four federal constitutional claims under § 1983: procedural due process (Count I), substantive due process (Count II), equal protection under a class of one theory (Count III), and a violation of the Fourth Amendment on behalf of the two plaintiffs who reside at the 12 Oaks at Woodfield (Count IV). The plaintiffs also contend that the defendants are liable under state law for tortious interference with contract (Count V) and defamation (Count VI), that Rolling Meadows is required to indemnify the individual defendants (Count VII), and that Rolling Meadows is liable for the actions of the individual defendants under a respondeat superior theory (Count VIII).

## II. Discussion

The defendants seek to dismiss the plaintiffs' second amended complaint pursuant to Rule 12(b)(1), arguing that the plaintiffs' procedural and substantive due process claims are, in fact, really Fifth Amendment takings claims that are not ripe because the plaintiffs failed to exhaust their state court remedies prior to filing suit. They also assert that the plaintiffs' equal protection claim is not ripe because it, too, is really a takings claim so the plaintiffs must first seek relief under the Illinois Eminent Domain Act, 735 ILCS § 30/1-1-1, *et seq*. Next, despite the inclusion of a Fourth Amendment claim brought on behalf of the two plaintiffs who reside at the 12 Oaks at Woodfield and who were stopped when the police barricades were in place, the defendants contend that if the due process and equal protection claims are dismissed, the court should decline to exercise supplemental jurisdiction over all of the plaintiffs' state law claims.

Finally, and in the alternative, the defendants seek to dismiss the plaintiffs' due process and equal protection claims under Rule 12(b)(6) for failure to state a claim for which relief may be granted.

In response, the plaintiffs filed a thirty-four page memorandum without leave of court to file an oversize brief. Any further oversize briefs that are filed without advance permission will be stricken. With that said, the court turns to the defendants' commendably brief motion to dismiss.

###  A.    Substantive and Procedural Due Process

As the court noted in its order dismissing the first amended complaint, "the initial step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The parties here continue to disagree as to what constitutional right is at issue. According to the defendants, any cause of action based on limiting access to the 12 Oaks property is necessarily a Fifth Amendment takings claim which must be exhausted in state court. Alternatively, the defendants assert that at best, any claims based on the alleged damage to the plaintiffs' reputation arise under state law and thus cannot form the basis of a cognizable federal due process claim.

In response, the plaintiffs note that due process claims based on the deprivation of a liberty interest, as opposed to a property interest, are not takings claims. They then assert that they were deprived of a liberty interest due to the negative publicity caused by the defendants' actions, which harmed their reputation and thus caused the rental income at the 12 Oaks at Woodfield complex to decrease. In addition, Sparks argues that the "defendants' concerted efforts had the effect of severely damaging Sparks' ability to thrive in his chosen field of

providing quality residential properties in the Chicago metropolitan area," Response at 10, and concludes that this injury is a deprivation of a liberty interest.

The court finds that the current iteration of the complaint still fails to state a cognizable due process claim. First, the court does not believe that the allegations in the second amended complaint are fundamentally different from those in the prior complaint. In both versions of the complaint, the gravamen of the plaintiffs' due process argument was that they suffered financial harm as a result of the negative publicity flowing from the placement of the barricades at the 12 Oaks at Woodfield complex. While the second amended complaint emphasizes the alleged harm to reputation caused by the barricades and adds additional actions taken by the defendants that allegedly harmed the plaintiffs, the end result is the same: the plaintiffs contend that harm to their reputation and the negative publicity cause by the barriers caused them to suffer financial harm. For the reasons discussed in the court's order dismissing the prior version of the complaint, this is a takings claim disguised as a due process claim and, as such, the plaintiffs must exhaust prior to commencing a federal action.

In any event, even if the court disregards portions of the second amended complaint and accepts for present purposes that the plaintiffs' due process claim is in fact based on harm to their reputation, the due process claims still cannot survive a motion to dismiss. It is possible to state a due process claim based on the deprivation of a liberty interest based on harm to a plaintiff's "good name, reputation, honor, or integrity." *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003), *quoting Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). However, "any stigmatic harm must take concrete forms and extend beyond mere reputational interests." *Id.*, *citing Paul v. Davis*, 424 U.S. 693, 711-12 (1976).

Specifically, a plaintiff must allege that "a right or status previously recognized by state law was distinctly altered or extinguished" by the state action at issue. *Paul v. Davis*, 424 U.S. at 711. The Supreme Court has explained that harm to reputation by itself does not rise to this level:

> [T]he interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions . . . . [An] interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. For these reasons we hold that the interest in reputation asserted in this case [involving allegedly defamatory publications] is neither "liberty" nor "property" guaranteed against state deprivation without due process of law. Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.

*Id*. at 711-12; *see also Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991) (reaffirming that under *Paul v. Davis*, there is no "constitutional protection for the interest in reputation"); *Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) ("Reputation per se is not a protected liberty interest, and, without more, defamation or stigmatization by the government does not give rise to any right to procedural due process, no matter how serious the harm to the subject's good name . . .").

Here, the Sparks plaintiffs allege that the defendants' actions harmed their reputation and negatively impacted Sparks' ability to compete in his chosen field of employment, since many prospective tenants elected to live elsewhere based on the negative publicity flowing from the barricades. To the extent that this is a claim based on harm to reputation, as opposed to a takings

claim, it is neither a cognizable due process claim nor shows that the plaintiffs were deprived of a specific right protected by the Fourteenth Amendment.

Sparks alternatively contends that the harm to his reputation negatively affected his ability to work because the apartment complex is not as robust as he believes it would have been had the defendants not engaged in the purportedly wrongful conduct described in the complaint. He then asserts that this harm to his reputation rises to the level of a deprivation of a constitutionally protected right. The Seventh Circuit has held that a protectible liberty interest in employment exists when harm to the plaintiff's reputation "makes it virtually impossible for the employee to find new employment in his chosen field." *RJB Properties, Inc. v. Board of Educ. of City of Chicago*, 468 F.3d 1005, 1011 (7th Cir. 2006) (internal citations and quotations omitted). The alleged downturn in the popularity of the 12 Oaks at Woodfield complex fails to rise to the level of a virtual ban on employment in Sparks' chosen field.

For all of these reasons, the plaintiffs have failed to state a colorable procedural or substantive due process claim. The defendants' motion to dismiss the plaintiffs' substantive and procedural due process claims is, therefore, granted.

**B.     Equal Protection**

Sparks asserts that the defendants arbitrarily targeted him in a spiteful effort to sabotage his business and prevent him from converting the apartments at the 12 Oaks at Woodfield into condominiums. According to Sparks, to further this plan, the defendants enacted zoning ordinances affecting only his property, selectively enforced the building code to penalize him, imposed a police barricade and interrogated residents and visitors to create the impression that his property was a hotbed of crime, banned parking near his property, initiated an aggressive

ticketing campaign against individuals parking near his property, and passed a localized tax that required Sparks to pay $612,000 for improvements that Sparks believes will never be built.

The defendants contend that the plaintiffs' equal protection claim is in reality an unexhausted takings claim. Alternatively, they contend that the equal protection claim fails on the merits. In the interests of completeness, the court has considered both arguments and finds that the equal protection claim must be dismissed.

### 1. Is the Equal Protection Claim a Takings Claim?

As a general rule, a plaintiff's claim "that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186 (1985). If the essence of a plaintiff's claim is that the government took its property, a plaintiff may not avoid the need to exhaust by asserting that its claim is based on equal protection. However, all land use claims are not necessarily subject to exhaustion. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 543 (7th Cir. 2008). Instead, a plaintiff may assert a "bona fide equal protection claim" by alleging, among other things, that the government acted maliciously in a "spiteful effort to 'get' him for reasons unrelated to any legitimate state objective." *Id*.

Here, the Sparks plaintiffs contend that the defendants' actions depressed their property values and caused them to suffer economic harm by preventing them from pursuing their chosen use of their property. This is a classic land use takings claim. Nevertheless, the Sparks plaintiffs vigorously argue that the bona fide equal protection claim exception applies. To the extent that

this is correct, the Sparks plaintiffs need not exhaust, so the court will consider whether they can proceed in federal court at this time pursuant to the exception.

### 2. The "Bona Fide Equal Protection Claim" Test

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. If state action is based on membership in a suspect class, it is subject to strict scrutiny and is constitutional only if it serves a compelling state interest. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). The plaintiffs asserts that the defendants treated them unfairly to prevent the apartments at the 12 Oaks at Woodfield from being converted into condominiums. Thus, they have not asserted that the defendants discriminated based on membership in a suspect class. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (a suspect class either "possesses an immutable characteristic determined solely by the accident of birth" or is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process") (internal citations omitted).

Where no suspect class is at issue, plaintiffs generally must allege that: (1) they are members of a protected class; (2) who are otherwise similarly situated to members of an unprotected class; (3) who were treated differently from members of the unprotected class; (4) based on the defendants' discriminatory intent. *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993). An exception to this rule is the "class of one" doctrine. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). To maintain an equal protection claim as

a class of one, a plaintiff must allege that: (1) he was treated differently from others outside the class; and (2) "no rational basis supports the difference in treatment." *Id.* at 564; *see also Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) ("The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action")..

With respect to the first prong, certain portions of the complaint do not show that the plaintiffs were treated differently than others. For example, the plaintiffs allege that they – as well as other nearby landowners – were subject to a special service area tax. The plaintiffs, however, also assert that Rolling Meadows chose to enforce the building code strictly only at the 12 Oaks at Woodfield property. The court will not delve into whether this allegation is sufficiently specific to satisfy recent changes to the notice pleading rule, *Smith v. Duffey*, — F.3d —, No. 08-2804, 2009 WL 2357872, at *4 (7th Cir. Aug. 3, 2009), because the plaintiffs cannot satisfy the second prong.

"[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008), *quoting Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). Moreover, according to the Seventh Circuit:

> while the court must presume the truth of all allegations in the complaint when evaluating a Rule 12(b)(6) motion to dismiss, allegations of animus do not overcome the presumption of rationality and the court evaluates those allegations once a plaintiff has pled facts that show the irrationality of the government action in question. This standard reflects the fairly intuitive idea that a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.

*Id*. at 547 (internal quotations omitted).

Here, the defendants assert that the plaintiffs have pled themselves out of court by arguing that the defendants' actions were driven by a desire to redevelop the property into a multi-use project that would bring in large sums of money for Rolling Meadows. *See, e.g.,* Second Amended Complaint at ¶ 62 (Rolling Meadows acted to further its plan of "setting the stage for future redevelopment of the complex"). As noted by the defendants, that motivation is the polar opposite of arbitrary governmental conduct.

It is easy – because the plaintiffs have explicitly set forth a rationale for the defendants' actions in their second amended complaint – to hypothesize a rational reason for the defendants' actions. The court appreciates that the Sparks plaintiffs want to convert to condominiums now rather than cede to the desires of the defendants and wait for the real estate market to improve. Nevertheless, the Sparks plaintiffs' understandable dissatisfaction with the roadblocks (both literal and figurative) set up by the defendants to prevent them from converting the complex to condominiums does not negate the fact that the defendants' actions were taken to further their plan of eventually having the property converted in the way they deem most financially advantageous to Rolling Meadows.

The court thus finds that this is not a situation where "no sound reason can be hypothesized" for the government action so that "the action would be inexplicable unless animus had motivated it." *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) (a class-of-one plaintiff states an equal protection claim if her allegations negate "any reasonably conceivable state of facts that could provide a rational basis for the classification") (collecting cases). This means that as with the plaintiffs' due process claims, they have at best stated a takings claim

which must be exhausted. Accordingly, the motion to dismiss the plaintiffs' equal protection claim is granted.

C. **State Law Claims**

Based on the above rulings, the Fourth Amendment claims brought by the plaintiffs who reside at the 12 Oaks at Woodfield (Count IV), the Sparks plaintiffs' state law claims of tortious interference with contract (Count V) and defamation (Count VI), and all plaintiffs' requests for indemnification (Count VII) and relief under a respondeat superior theory (Count VIII) remain. The defendants seek to dismiss all of the plaintiffs' state law claims, contending that the dismissal of the due process and equal protection claims means that the court should not exercise supplemental jurisdiction. In light of the Fourth Amendment claims brought by the individual plaintiffs, the court assumes that the defendants are actually arguing that the court should not exercise supplemental jurisdiction over the Sparks plaintiffs' state law claims. The court will thus focus on the Sparks plaintiffs tortious interference with contract and defamation claims as the indemnification and respondeat superior counts are not free-standing state law claims.

When a federal court has original jurisdiction over an action, it may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," even if those claims "involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Federal and state law claims are part of the same case or controversy if they derive from a "common nucleus of operative fact." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997). "A loose factual connection between the

claims is generally sufficient" to satisfy this standard. *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995).

The court finds that the individual plaintiffs' Fourth Amendment claims and the Sparks plaintiffs' state law claims for tortious interference with contract and defamation fail to meet this undemanding test because the factual basis for these claims is completely different. Specifically, while all of the claims arise from events relating to the 12 Oaks at Woodfield complex, the operative facts necessary to prove the individual plaintiffs' Fourth Amendment claim are wholly unrelated to the operative facts necessary to prove the Sparks plaintiffs' tortious interference with contract and defamation claims. *See Berg v. BCS Financial Corp.*, 372 F.Supp.2d 1080, 1093 (N.D. Ill. 2005) ("[s]upplemental jurisdiction does not exist where the federal and state claims merely share a factual background") (collecting cases). Accordingly, the court declines to exercise supplemental jurisdiction over the Sparks plaintiffs' tortious interference with contract and defamation claims.

### III. Conclusion

The defendants' motions to correct their motion to dismiss to include missing pages [#139 & #140] are granted. For the reasons discussed above, the defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [#136] is granted. Because the Sparks plaintiffs have already had one opportunity to amend their constitutional claims, their due process and equal protection claims (Counts I, II & III) are dismissed with prejudice. In light of this ruling, the court declines to exercise supplemental jurisdiction over the Sparks plaintiffs' tortious interference with contract and defamation claims (Counts V & VI). In addition, the court declines to exercise supplemental jurisdiction over the portions of the indemnification and

respondeat superior claims directed at the Sparks plaintiffs (Counts VII & VIII). The individual plaintiffs' Fourth Amendment claims (Count IV) shall proceed, and the court will exercise supplemental jurisdiction over the requests for indemnification and for relief under a respondeat superior theory as to these plaintiffs.

DATE:  August 11, 2009                              /s/ Blanche M. Manning
                                                    Blanche M. Manning
                                                    United States District Judge